UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON,

*Plaintiff,*

v.

U.S. DEPARTMENT OF JUSTICE,

*Defendant*.

Civil Action No. 20-0212 (EGS)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

*Table of Authorities*.................................................................................................................. ii

BACKGROUND ...........................................................................................................................1

STANDARD...................................................................................................................................2

ARGUMENT .................................................................................................................................3

      I.      EOUSA and OIP Conducted Adequate Searches for Records Responsive to
             Plaintiff's Requests .............................................................................................3

      II.     EOUSA and OIP Properly Withheld in Full All Records Pursuant to FOIA
             Exemptions 5, 6, 7(A), 7(C) and 7(F)……………………………………………..5

             A.  The Records at Issue Have Been Compiled for Law
                  Enforcement Purposes………………………………………………………..6

             B.  EOUSA and OIP Properly Withheld the Records at Issue Pursuant to
                  FOIA Exemption 7(A)………………………………………………………..7

              C.  EOUSA and OIP Correctly Withheld Names and Identifying Information
                  of Members of the Review and Other Law Enforcement Personnel
                  Under FOIA Exemptions 6 and 7(C)………………………………………...10

             D.  EOUSA Correctly Withheld Witness Information Pursuant to
                  FOIA Exemption 7(F)………………………………………………………..12

              E.  EOUSA Correctly Withheld Witness Information Pursuant to
                  FOIA Exemption 5………………………………………………………...13

             F.  EOUSA and OIP Properly Concluded That There are No Reasonably
                  Segregable Portions of the Responsive Records…………………………….14

CONCLUSION………………………………………………………………………………..15

# TABLE OF AUTHORITIES

**Cases**

*Alyeska Pipeline Serv. Co. v. EPA,*
  856 F.2d 309 (D.C. Cir. 1988) ................................................................................9

*Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review,*
  830 F.3d 667 (D.C. Cir. 2016) ..............................................................................11

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ................................................................................................2

*Armstrong v. Exec. Office of the President,*
  97 F.3d 575 (D.C. Cir. 1996) ...............................................................................14

*Baker & Hostetler LLP v. U.S. Dep't of Commerce,*
  473 F.3d 312 (D.C. Cir. 2006) ................................................................................3

*Brayton v. Office of U.S. Trade,*
  *Rep.*, 641 F.3d 521 (D.C. Cir. 2011) ......................................................................2

*Campbell v. DOJ,*
  164 F.3d 20 (D.C. Cir. 1998) ..................................................................................6

*Canning v. Dep't of Justice,*
  567 F. Supp. 2d 104 (D.D.C. 2008) ......................................................................14

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ................................................................................................2

*Chambers v. U.S. Dep't of Interior,*
  568 F.3d 998 (D.C. Cir. 2009) .............................................................................4, 5

*Clemente v. FBI,*
  867 F.3d 111 (D.C. Cir. 2017) ..............................................................................3, 5

*Ctr. for Nat'l Security Studies v. U.S. Dep't of Justice,*
  331 F.3d 918 (D.C. Cir. 2003) .................................................................................7

*CREW v. U.S. Dep't of Justice,*
  746 F.3d 1082 (D.C. Cir. 2014)………………………………………………..7

*Defenders of Wildlife v. U.S. Border Patrol*,
   623 F. Supp. 2d 83 (D.D.C. 2009) ........................................................................................3

*Dep't of Air Force v. Rose*,
   425 U.S. 352 (1976) ...........................................................................................................10

*Dep't of Defense v. Fed. Labor Relations Auth.*,
   510 U.S. 487 (1994) ...........................................................................................................11

*DOJ v. Reporters Committee for Freedom of the Press*,
   489 U.S. 749 ......................................................................................................................10

*FTC v. Grolier Inc.*,
   462 U.S. 19 (1983) .............................................................................................................13

*Garza v. U.S. Marshals Service*, Civ. A.,
   Nos. 16-0976, 2018 WL 4680205 (D.D.C. Sept. 28, 2017) ..............................................12

*Ground Saucer Watch, Inc. v. CIA*,
   692 F.2d 770 (D.C. Cir. 1981) .............................................................................................3

*Jefferson v. DOJ*,
   284 F.3d 172 (D.C. Cir. 2002) .............................................................................................6

*Juarez v. Dep't of Justice*,
   518 F.3d 54 (D.C. Cir. 2008) ........................................................................................7, 8, 9

*Judicial Watch v. DOJ*,
   432 F.3d 366 (D.C. Cir. 2005) ...........................................................................................13

*Leopold v. CIA*,
   106 F. Supp. 3d 51 (D.D.C. 2015) .......................................................................................9

*Levinthal v. FEC*,
   219 F. Supp. 3d 1 (D.D.C. 2016) .....................................................................................6, 7

*Mapother v. Dep't of Justice*,
   3 F.3d 1533 (D.C. Cir. 1993) ...............................................................................................7

*Martin v. Office of Special Counsel*,
   819 F.2d 1181 (D.C. Cir. 1987) .........................................................................................13

*McGehee v. C.I.A.*,
   697 F.2d 1095 (D.C. Cir. 1983) ...........................................................................................3

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force,*
   566 F.2d 242 (D.C. Cir. 1977) ...........................................................................................14

*Media Research Ctr. v. U.S. Dep't of Justice,*
   818 F. Supp. 2d 131 (D.D.C. 2011) ......................................................................................2

*Michael v. U.S. Dep't of Justice,*
   Civ. A. No. 17-0197, 2018 WL 4637358 (D.D.C. Sept. 27, 2018) .......................................12

*Miller v. DOJ,*
   562 F. Supp. 2d 82 (D.D.C. 2008) ......................................................................................13

*NLRB v. Sears, Roebuck & Co.,*
   421 U.S. 132 (1975) ...........................................................................................................13

*Oglesby v. U.S. Dep't of Army,*
   920 F.2d 57 (D.C. Cir. 1990) ...............................................................................................3

*Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico,*
   740 F.3d 195 (D.C. Cir. 2014) .........................................................................................6, 12

*Raulerson v. Ashcroft,*
   271 F. Supp. 2d 17 (D.D.C. 2002) ......................................................................................12

*Reed v. NLRB,*
   927 F.2d 1249 (D.C. Cir. 1991) ..........................................................................................10

*Roth v. DOJ,*
   642 F.3d 1161 (D.C. Cir. 2011) ....................................................................................10, 11

*SafeCard Servs . Inc. v S.E.C.,*
   926 F.2d 1197 (D.C. Cir. 1991) .........................................................................................3, 4

*Sea Shepherd Conservation Soc'y v. IRS,*
   208 F. Supp. 3d 58 (D.D.C. 2016) .......................................................................................6

*Sussman v. U.S. Marshals Serv.,*
   494 F.3d 1106 (D.C. Cir. 2007) ..........................................................................................14

*Swan v. SEC,*
   96 F.3d 498 (D.C. Cir. 1996) ...............................................................................................9

*Tao v. Freeh,*
   27 F.3d 635 (D.C. Cir. 1994) ...............................................................................................2

iv

*Tax Analyst v. IRS,*
   294 F.3d 71 (D.C. Cir. 2002).................................................................6

*Weisberg v. DOJ,*
   745 F.2d 1476 (D.C. Cir. 1984)...........................................................3

**Statutes**

5 U.S.C. § 552...........................................................................................1
5 U.S.C. § 552(b)(5).................................................................................13
5 U.S.C. § 552(b)(6).................................................................................10
5 U.S.C. § 552(b)(7)...................................................................................6
5 U.S.C. § 552(b)(7)(A)..............................................................................7
5 U.S.C. § 552(b)(7)(C)............................................................................10
5 U.S.C. § 552(b)(7)(F).............................................................................12

**Rules**

Fed. R. Civ. P. 56(a)..................................................................................2

## BACKGROUND

During the Spring of 2019, U.S. Attorney General William Barr directed a team, to be lead by John H. Durham, U.S. Attorney for the District of Connecticut, to conduct a review ("the Review") into certain activities involving the campaigns in the 2016 U.S. presidential election, and authorized U.S. Attorney Durham to bring criminal charges, if appropriate, in the United States District Court for the District of Columbia.  The existence of the Review was disclosed to Congress by letter dated June 10, 2019, directed to the House Committee on the Judiciary from Assistant Attorney General Stephen E. Boyd.  Brinkmann Decl. Ex. C.

On November 19, 2019, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Plaintiff submitted a request to the Department of Justice's ("DOJ") Office of Information Policy ("OIP") seeking records "sufficient to show the detailed cost breakdowns for trips as they relate to John H. Durham's review relating to the origins of the government's investigation into interference in the 2016 election" as well "as documents sufficient to show the total cost of all trips taken by Attorney General William P. Barr related in whole or in part to Durham's review, including, but not limited to, trips to Italy."  Brinkmann Decl. Ex. A.  This request was followed by a second FOIA request submitted to OIP and to DOJ's Executive Office for United States Attorneys ("EOUSA") requesting "copies of all records of budgets, expenses, salaries, and costs of the investigation being conducted by United States Attorney John H. Durham of the U.S. Attorneys' Office for the District of Connecticut as they relate to his review into the origins of the

government's investigation into interference in the 2016 election."  Brinkmann Decl. Ex. B.  On January 27, 2020, Plaintiff filed the instant lawsuit.  *See* ECF No. 1.

OIP and EOUSA coordinated their searches for records responsive to Plaintiff's FOIA requests.  Brinkmann Decl. ¶ 14.  Upon completion of the searches, OIP provided its final response to Plaintiff with respect to both of the requests in separate letters dated May 22, 2020.  *Id.* ¶ 9-10 Exs. H, I.  OIP withheld in full all responsive documents pursuant to FOIA Exemption 7(A), with FOIA Exemptions 6 and 7(C) also applying in part to some of the information.  *Id.*  On July 1, 2020, EOUSA provided its final response to Plaintiff withholding in full all responsive documents pursuant to FOIA Exemption 7(A), with FOIA Exemptions 5, 6, 7(C), 7(D) and 7(F) also applying in part to some of the information[1].  Jolly Decl. ¶ 5. Ex. 2.

## STANDARD

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id.*

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011); *see also Media Research Ctr. v.*

---

[1] EOUSA is no longer asserting FOIA Exemption 7(D).

*U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment.") (quoting *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). A government agency may obtain summary judgment in a FOIA case by relying on "relatively detailed" and "nonconclusory" declarations. *See McGehee v. C.I.A.*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). Courts give agency declarations "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs . Inc. v S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## ARGUMENT

### I.      EOUSA and OIP Conducted Adequate Searches for Records Responsive to Plaintiff's Requests

EOUSA and OIP fulfilled their obligation to search for records responsive to Plaintiff's FOIA requests.  An agency is entitled to summary judgement in a FOIA case with respect to the adequacy of its search if it shows "'that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested.'"  *Clemente v. FBI,* 867 F.3d 111, 117 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."  *Weisberg v. DOJ,* 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citation omitted).  And "[a]n agency may establish the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits describing its efforts."  *Baker & Hostetler LLP v. U.S. Dep't of Commerce,* 473 F.3d 312, 318 (D.C. Cir. 2006).  "Agency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and

3

discoverability of other documents.'" *SafeCard Servs., Inc.,* 926 F.2d at 1200 (citation omitted); *Chambers v. U.S. Dep't of Interior,* 568 F.3d 998, 1003 (D.C. Cir. 2009) (recognizing substantial weight traditionally accorded to agency affidavits in FOIA adequacy-of-search cases).  Applying these principles, DOJ is entitled to summary judgment with respect to the adequacy of its searches.

OIP and EOUSA coordinated their searches for records responsive to Plaintiff's FOIA requests.  Brinkmann Decl. ¶ 14.  As the Review is funded out of the U.S. Attorneys Salaries and Expenses appropriation – *see Id.* Ex. C, OIP provided the Justice Management Division (JMD) Finance Staff with a list of names of individuals assigned to the Review that OIP had identified in the course of responding to this and other related FOIA requests.  *Id.* ¶ 15.  The JMD Finance Staff conducted searches for records responsive to Plaintiff's requests in E2 Solutions, an operational system of records that processes all of DOJ employee travel expenses, with the exception of the Federal Bureau of Investigation.  *Id.* ¶ 12.  The JMD Finance Staff also searched the National Finance Center (NFC) for payroll information.  *Id.*  As a result of these searches, OIP located spreadsheets totaling approximately 60 PDF pages.  *Id.* ¶ 13.

On the other hand, EOUSA worked and coordinated directly with the United States Attorney's Office for the District of Connecticut (USAO-CT) to search for records responsive to Plaintiff's requests.  Jolly Decl. ¶ 6.  All costs associated with the Review, which are maintained by USAO-C, are charged to a special account funded by EOUSA; this account includes travel and associated expenses, as well as certain salary expenses.  Larson Decl. ¶ 6.  To respond to the request, USAO-CT created a spreadsheet which includes two tabs; the first tab contains the identities and salaries of USAO-CT investigators on the Review, and the second tab lists specific information regarding travel expenses, including the identity of the traveler, the trip's duration and destination, and total costs associated with the trip.  *Id.* ¶ 7.  The amounts included on the

spreadsheet are the only expenses, salaries, and costs responsive to Plaintiff's FOIA requests as USAO-CT does not budget the costs of the Review. *Id.* ¶ 9.

Based on the above it is clear that EOUSA and OIP "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested.'" *Clemente,* 867 F.3d at 117.  And accordingly, EOUSA and DOJ are entitled to summary judgment with respect to the adequacy of its search.

## II.     EOUSA and OIP Properly Withheld in Full All Records Pursuant to FOIA Exemptions 5, 6, 7(A), 7(C) and 7(F)

At issue in the instant case are three Excel spreadsheet documents; the first spreadsheet lists names and salaries of members of the Review, as well as their home office.  Brinkmann Decl. ¶ 17.  The second spreadsheet contains travel expense information incurred by members of the Review, including the identity of the travelers, the trip's duration, the destination and a breakdown of cost associated with each trip. *Id.*  These two documents were processed by OIP and withheld in full pursuant to FOIA Exemption 7(A), with Exemptions 6 and 7(C) additionally protecting specific information within these records. *Id.*  EOUSA processed the third spreadsheet, which contains identities and salaries of USAO-CT investigators, travel and travel cost information, and witness identifying information.  Larson Decl. ¶ 6-8.  EOUSA withheld in full this spreadsheet pursuant to FOIA Exemption 7(A), with FOIA Exemptions 5, 6, 7(C) and 7(F) additionally protecting specific information within this document.  Jolly Decl. ¶ 5.

**A.  The Records at Issue Have Been Compiled For Law Enforcement Purposes**

To establish the applicability of any subparts of FOIA Exemption 7, the government must first show that the records at issue were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7).  The D.C. Circuit "has long emphasized that the focus is on how and under what circumstances the requested files were compiled, … and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'"  *Sea Shepherd Conservation Soc'y v. IRS,* 208 F. Supp. 3d 58, 79 (D.D.C. 2016) (quoting *Jefferson v. DOJ*, 284 F.3d 172, 177 (D.C. Cir. 2002) (additional citations omitted).  A record is "compiled for law enforcement purposes" within the meaning of Exemption 7 "so long as there is (1) a rational 'nexus' between the record and the agency's law enforcement duties, and (2) a connection between the subject of the record and a possible security risk or violation of federal law."  *Levinthal v. FEC*, 219 F. Supp. 3d 1, 6 (D.D.C. 2016) (citing *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1998)).  Further, where, as here "the agency's principal function is law enforcement, courts are "'more deferential'" to the agency's claimed purpose for the particular records."  *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico,* 740 F.3d 195, 203 (D.C. Cir. 2014) (quoting *Tax Analyst v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002).

As the three documents at issue contain the identities and salaries of members of the Review, and they include travel expenses and travel information incurred in furtherance of the Review, the threshold requirement of FOIA Exemption 7 is satisfied as there is a "rational 'nexus'" to DOJ's law enforcement duties.  *Levinthal,* 219 F. Supp. 3d at 6.  These records contain specific information on salaries, expenditures and staffing details as it relates to the Review being conducted by U.S. Attorney Durham.  Brinkmann Decl. ¶ 19.  U.S. Attorney Durham was directed by the Attorney General Barr to review certain activities involving the campaign in the 2016 U.S.

6

presidential election and certain related matters, and was subsequently authorized to bring criminal charges, if appropriate, in the United States District Court for the District of Columbia.  *Id.*  Thus, the second threshold requirement, namely that the records have "a connection [to] … a possible security risk or violation of federal law," is also met. The expenditure and staffing information at issue relate to the Review's investigation into potential violations of law, and accordingly the threshold requirement of FOIA Exemption 7 is satisfied here.    Brinkmann Decl. ¶ 19.

### B. OIP and EOUSA Properly Withheld the Records at Issue Pursuant to FOIA Exemption 7(A)[2]

Exemption 7(A) protects "records or information compiled for law enforcement purposes [when release] could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).  The government must show that production of the records at issue "(1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated."  *Mapother v. Dep't of Justice,* 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis omitted).  "Exemption 7(A) does not require a presently pending 'enforcement proceeding'" – "an ongoing … investigation" suffices. *Ctr. for Nat'l Security Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926 (D.C. Cir. 2003); *see also Citizens for Responsibility & Ethics in Wash. v. U. S. Dep't of Justice*, 746 F.3d 1082, 1098 (D.C. Cir. 2014) ("[A]n ongoing criminal investigation typically triggers Exemption 7(A)."); *Juarez v. Dep't of Justice*, 518 F.3d 54, 59 (D.C. Cir. 2008) ("[S]o long as the investigation continues to gather evidence for a possible future

---

[2] The OIP declarant, Vanessa Brinkmann, provides the basis for the Exemption 7(A) withholdings for both EOUSA and OIP.  Brinkmann Decl. ¶ 17.

criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies.").

The release of salaries, travel details and expenditures, and staffing information related to the Review could reasonably be expected to interfere and undermine the Review's ongoing investigatory activities.  The information at issue has neither been officially acknowledged nor confirmed, including the identities of the officials comprising the Review, their salaries, and the "detailed breakdown" of costs regarding any trips associated with the Review.[3]  Brinkmann Decl. ¶ 22.  These records contain specific dollar amounts concerning the number and types of staff working for the Review and specific travel costs incurred; this information reveals the extent to which DOJ deployed resources necessary to continue the Review's ongoing investigatory activities.  *Id.*  ¶ 23. Although individual dollar amounts or expense information may seem inconsequential, taken together this information provides substantive information about the Review; the release of travel information – frequency of domestic or foreign travel, would reveal details about the scope, direction, and nature of the investigation, including information of where witnesses or persons of interest are located.  *Id.*  Furthermore, release of the salaries of the members on the Review would not only reveal the exact number of officials on the Review – which in of itself would disclose details about the scope and breadth of the investigation, but would also provide their locality, relative experience, area of expertise, and the occupational composition of the Review; the combination of this information speaks to the scope, direction, and nature of the

---

[3] DOJ notes that subsequent to the final responses it issued in response to Plaintiff's FOIA request, on August 14, 2020, the Review instituted criminal proceedings in the United States District Court for the District of Columbia, and as a result, two members of the Review have been identified: Special Assistant United States Attorney for the District of Columbia Neeraj N. Patel, and Assistant United States Attorney for the District of Columbia, Anthony Scarpelli.

investigation. *Id.* The release of such information would reveal the resources available to the investigation, the Review's areas of investigatory interest (based on the expertise of specific members of the Review), which could risk influencing, compromising, or tainting information that may be obtained from the targets or by other sources, risking fabrication or falsification of future testimony, destruction or alteration of evidence, or attempts to intimidate or influence potential sources. *Id.* Moreover, individuals conducting high-profile investigations, such as this one, may be surveilled in an effort to obtain non-public information about the ongoing investigation, such as information on cooperating witnesses or potential defendants, and the location of relevant evidence; such attempts at surveillance have the effect of obstructing the investigation. *Id.*

As set forth in the Brinkmann Declaration, DOJ correctly determined that disclosure of the information at issue could reasonably be expected to interfere with the ongoing investigations pursued by the Review. *Id.* ¶ 25. *See Alyeska Pipeline Serv. Co. v. EPA,* 856 F.2d 309, 312 (D.C. Cir. 1988) (upholding assertion of 7(A) where disclosure would "prematurely reveal[] to the subject of this ongoing investigation the size, scope and direction of this investigation"); *Swan v. SEC,* 96 F.3d 498, 500 (D.C. Cir. 1996) (the "records could reveal much about the focus and scope of the [agency's] investigation, and are thus precisely the sort of information exemption 7(A) allows an agency to keep secret"); *Cf. Leopold v. CIA,* 106 F. Supp. 3d 51, 54, 58 (D.D.C. 2015) (upholding, under Exemption 3 and Section 102A(i)(1) of the National Security Act, the CIA's withholding of information "relate[d] to … proposed and actual expenditures on [its] detention and interrogation program," on the grounds that disclosure of the same "could reveal sensitive information about [the Agency's ] sources and methods"). Thus, based on the above, DOJ correctly applied FOIA Exemption 7(A) to all of the records at issue.

**C. EOUSA and OIP Correctly Withheld Names and Identifying Information of Members of the Review and Other Law Enforcement Personnel Under FOIA Exemptions 6 and 7(C)**

As noted above, EOUSA and OIP withheld in full all responsive records pursuant to FOIA Exemption 7(A), with FOIA Exemptions 6 and 7(C) additionally protecting specific information within these records. Brinkmann Decl. ¶ 17; Jolly Decl. ¶ 5. EOUSA and OIP correctly withheld names and identifying information of members of the Review and other law enforcement personnel under FOIA Exemptions 6 and 7(C). OIP does however acknowledge that subsequent to its final response to Plaintiff's FOIA request, the Review instituted criminal proceedings in the United States District Court for the District of Columbia resulting in the identification of two members of the Review. Brinkmann Decl. ¶ 31.

FOIA Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has adopted a broad construction of the privacy interests protected by Exemption 6, emphasizing that "privacy encompass[es] the individual's control of information concerning his or her person." *DOJ v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 764 n. 16 (1989) (citation omitted). Exemption 6 requires an agency to balance the individual's right to privacy against the public's interest in disclosure. *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). An agency must determine whether disclosure of information threatens a protectable privacy interest and if so, the agency must weigh that privacy interest against the public interest in disclosure, if any. *See Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991). The "only relevant public interest … to be weighed in this balance is the extent to which disclosure would serve the core purpose of FOIA, which is contribut[ing] significantly to the public

10

understanding of the operations or activities of the government." *Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994).

Likewise FOIA Exemption 7(C) protects "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). "Exemption 7(C) … is 'somewhat broader' than Exemption 6, which requires proof of a 'clearly unwarranted invasion of personal privacy.'" *Roth v. DOJ,* 642 F.3d 1161, 1173 (D.C. Cir. 2011) (quoting *DOJ v. Reporters Comm. for Freedom of the Press*). Where the information in question was compiled for law enforcement purposes, courts "have no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Id.* However under both Exemption 6 and 7(C), the agency must engage in a balancing test to determine whether the public interest in disclosure is outweighed by a significant private interest in non-disclosure. *See Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review,* 830 F.3d 667, 673-74 (D.C. Cir. 2016).

EOUSA and OIP determined that releasing the names and identifying information of members of the Review, along with other law enforcement personnel associated with the Review, would constitute a clearly unwarranted invasion of personal privacy of these individuals. Brinkmann Decl. ¶ 34, Jolly Decl. ¶ 19. Given the inherent sensitive nature of the Review's work, as well as the heightened public scrutiny and the partisan political attacks that occur when any new facts are made public, disclosure of the names and identifying information of the personnel involved with the Review could subject these individuals to harassment and to questioning as to the scope of their involvement in the ongoing investigations of the Review. *Id.* ¶ 32, *Id.* ¶ 19. EOUSA and OIP also concluded that releasing these individuals' identities would not significantly

contribute to the public's understanding of how DOJ carries out its statutory duties. *Id.* ¶ 33, *Id.* ¶ 19. It is clear that these individuals' privacy interest outweigh the public interest in the disclosure of their identities, and accordingly this information is correctly withheld pursuant to FOIA Exemptions 6 and 7(C). *See e.g. Michael v. U.S. Dep't of Justice,* Civ. A. No. 17-0197, 2018 WL 4637358, *11 (D.D.C. Sept. 27, 2018) ("disclosure of personal information of law enforcement personnel may hinder the ability to conduct ongoing investigations, may lead to unwarranted harassment, and may otherwise cause embarrassment" constituting an invasion of privacy).

### D. EOUSA Correctly Withheld Witness Information Pursuant to FOIA Exemption 7(F)

FOIA Exemption 7(F) allows the withholding of law enforcement information that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "Disclosure need not definitely endanger life or physical safety; a reasonable expectation of endangerment suffices." *Public Employees for Environment Responsibility,* 740 F. 3d at 205-06. This exemption has been "invoked to protect the identities of informants, sources, and law enforcement personnel." *Michael v. U.S. Dep't of Justice,* Civ. A. No. 17-0197, 2018 WL 4637358, *12 (D.D.C. Sept. 27, 2018) (internal citations and quotations omitted). The information withheld under Exemption 7(F) is also subject to protection under Exemptions 6 and 7(C). *Garza v. U.S. Marshals Service,* Civ. A. Nos. 16-0976, 2018 WL 4680205, *17 (D.D.C. Sept. 28, 2017). However, unlike 7(C), there is no balancing test, Exemption 7(F) "is an absolute ban against [disclosure of] certain information," *Raulerson v. Ashcroft,* 271 F. Supp. 2d 17, 29 (D.D.C. 2002).

In combination with FOIA Exemptions 6 and 7(C), EOUSA correctly withheld the names of witnesses under Exemption 7(F). EOUSA determined that there was a reasonable likelihood that a threat of harm could be posed to witnesses assisting with the underlying investigation of the Review. Jolly Decl. ¶ 23. Accordingly, witness identifying information was correctly withheld

pursuant to FOIA Exemption 7(F). *Miller v. DOJ*, 562 F. Supp. 2d 82, 125 (D.D.C. 2008) (finding agency properly withheld information pertaining to symbol-numbered informant and cooperating witnesses).

### E.  EOUSA Correctly Withheld Witness Information Pursuant to Exemption 5

Exemption 5 of FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency . . . ."  5 U.S.C. § 552(b)(5).  Courts have construed this language to "exempt those documents, and only those documents, normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see also FTC v. Grolier Inc.*, 462 U.S. 19, 26 (1983); *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).

Exemption 5 incorporates the attorney-work product privilege, which protects documents and other memoranda prepared by an attorney in contemplation of litigation. *See, e.g., Judicial Watch v. DOJ*, 432 F.3d 366, 369 (D.C. Cir. 2005).  Moreover, because the work product doctrine does not distinguish between factual and deliberative material, "factual material is itself privileged when it appears within documents that are attorney work product." *Id.* at 371. Thus, "[i]f a document is fully protected as work product, then segregability is not required." *Id.*

EOUSA withheld information pertaining to witnesses pursuant to the attorney work-product privilege of FOIA Exemption 5.  Jolly Decl. ¶ 11.  Disclosure of this information would reveal choice of witnesses, with their associated costs, which is information that relates to requests or directions of an U.S. Attorney in anticipation or during litigation. *Id.*  This type of information is exempt from disclosure because it would reveal details of the investigation,

including costs and geographic travel metrics for witnesses, which would provide insight into the scope and breadth of the Review, and how the investigation was developed.  *Id.*

### F.  EOUSA and OIP Properly Concluded That There are No Reasonably Segregable Portions of The Responsive Records

Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information. Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions."  *Mead Data Cent. Inc. v. U.S. Dep't of Air Force,* 566 F.2d 242, 260 (D.C. Cir. 1977).  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated.  *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Justice*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

EOUSA and OIP have met their burden of establishing that all reasonably segregable non-exempt information has been disclosed.  With respect to the three documents at issue, EOUSA and OIP reviewed the information withheld pursuant to FOIA Exemption 7(A) and determined that releasing any further information could reasonably be expected to interfere with enforcement proceedings.  Brinkmann Decl. ¶ 26.  EOUSA and OIP further stated that every effort was made to release without invading the privacy interests who were mentioned in the records at issue, however because information protected by Exemptions 6, 7(C) and 7(F) fell within material protected under Exemption 7 (A), no further segregation was possible.  *Id.* ¶ 35, Jolly Decl. ¶ 24.

14

EOUSA reached a similar conclusion with respect to its application of FOIA Exemption 5.  Jolly Decl. ¶ 11.

## CONCLUSION

For all of the reasons set forth above and in the declarations of Vanessa R. Brinkmann, Vinay J. Jolly, and John W. Larson, DOJ respectfully submits that this motion for summary judgment should be granted.

Dated: September 11, 2020                     Respectfully submitted,

                                              MICHAEL R. SHERWIN
                                              Acting United States Attorney

                                              DANIEL F. VAN HORN, D.C. Bar #924092
                                              Chief, Civil Division

                                              By: _/s/ Kathleene Molen_
                                              KATHLEENE MOLEN
                                              Assistant United States Attorney
                                              555 4th Street, N.W.
                                              Washington, D.C. 20530
                                              (202) 803-1572
                                              Kathleene.Molen@usdoj.gov

                                              _Counsel for Defendant_