# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON**<br>        *Plaintiff*,<br>    v.<br>**United States Department of Justice**,<br>        *Defendant*. | No. 20-0212-EGS<br><br>DECLARATION OF VANESSA R. BRINKMANN<br><br>Hon. Emmet G. Sullivan |

## DECLARATION OF VANESSA R. BRINKMANN

I, Vanessa R. Brinkmann, declare the following to be true and correct:

  1. I am Senior Counsel in the Office of Information Policy (OIP), United States Department of Justice (DOJ or Department). In this capacity, I am responsible for supervising the handling of the Freedom of Information Act (FOIA) requests processed by the Initial Request Staff (IR Staff) of OIP that are in litigation. The IR Staff of OIP is responsible for processing FOIA requests seeking records from within OIP and within six senior leadership offices of the Department of Justice, specifically, the Offices of the Attorney General (OAG), Deputy Attorney General (ODAG), Associate Attorney General (OASG), Legal Policy (OLP), Legislative Affairs (OLA), and Public Affairs (PAO). The IR Staff determines whether records responsive to FOIA requests exist and, if so, whether they can be released in accordance with the FOIA. In processing such requests, the IR Staff consults with personnel in the senior leadership offices and, when appropriate, with personnel in other components within the Department of Justice, as well as with others in the Executive Branch.

  2. I make the statements herein on the basis of personal knowledge, as well as information provided to me by others within the Executive Branch of the Federal Government

with knowledge of the types of records at issue in this case, and on information acquired by me in the course of performing my official duties.

### Plaintiff's Initial FOIA Requests

3.      By letter dated November 19, 2019, Plaintiff submitted a FOIA request to OIP. Plaintiff's request sought records "sufficient to show the detailed cost breakdowns for trips as they relate to John H. Durham's review . . . [and] the total cost of all trips taken by Attorney General William P. Barr related in whole or in part to Durham's review . . . ."  A copy of Plaintiff's FOIA request is attached hereto as Exhibit A.  Additionally, by letter dated December 5, 2019, Plaintiff submitted a second FOIA request, which sought "copies of all records of budgets, expenses, salaries, and costs of the investigation being conducted by" Mr. Durham.  The December 5, 2019 request also sought expedited processing.  A copy of Plaintiff's second FOIA request is attached hereto as Exhibit B.  A request identical to the second request was also sent to DOJ's Executive Office for United States Attorneys (EOUSA).  See Complaint, ECF No. 1.[1]

### Attorney General Barr's Appointment of Durham & Scope of the Review

4.      During the Spring of 2019, Attorney General Barr directed a team, to be led by the United States Attorney for the District of Connecticut, John H. Durham, to conduct a review (the "Review") into certain activities involving the campaigns in the 2016 U.S. presidential election as well as certain related matters, and, subsequently, authorized Durham to bring criminal charges if appropriate in the United States District Court for the District of Columbia. The Review is a collaborative, ongoing effort between the Review and the U.S. intelligence community, as well as certain foreign actors.  The existence of the Review was disclosed to Congress by letter dated June 10, 2019, directed to the House Committee on the Judiciary from Assistant Attorney General Stephen E. Boyd.  A copy of this letter is attached here to as Exhibit C.  This letter also noted:  "While the Attorney General has been granted the authority to declassify information in connection with the Review, it is of great importance to the Department to protect classified information by preventing the unwarranted disclosure of sensitive sources,

---

[1] The EOUSA tracking number assigned to this request is 2020-000797.

methods, techniques and materials where such disclosure would endanger the personal safety of U.S. government employees or friendly foreign partners, harm U.S. national security interests, or compromise the ability of U.S. government agencies to conduct their important work to protect the American people." Id.  Additionally, the letter informed Congress that "Mr. Durham's Review will be funded out of the U.S. Attorneys Salaries and Expenses appropriation." Id.

5. Subsequently, in a letter dated February 6, 2020, in advance of the commencement of criminal proceedings in the United States District Court for the District of Columbia, the Attorney General appointed U.S. Attorney Durham as Special Attorney to the Attorney General, pursuant to 28 U.S.C. § 515.  A copy of the letter reflecting this appointment is attached hereto as Exhibit D.  To date, the Review has charged one defendant by criminal information in U.S. District Court.

### Processing of Plaintiff's FOIA Requests

6. By letter dated December 13, 2019, OIP acknowledged Plaintiff's request dated November 19, 2019 (the "Travel Costs" request) and assigned administrative tracking number DOJ-2020-000828.  A copy of OIP's acknowledgement letter is attached hereto as Exhibit E.  Also, by letter dated December 13, 2019, OIP acknowledged Plaintiff's request dated December 6, 2019 (the "Salaries & Expenses" request), assigned administrative tracking number DOJ-2020-001224, and denied Plaintiff's request for expedited processing.  A copy of OIP's acknowledgement letter is attached hereto as Exhibit F.

7. On December 16, 2019, the OIP Senior Government Information Specialist then assigned to Plaintiff's two requests contacted Plaintiff by telephone to clarify what information each request sought.  Plaintiff confirmed that the Travel Costs request included any records regarding the costs of trips "taken by Attorney General Barr that relate to US Attorney Durham's review of the origins of the government's investigation into interference in the 2016 presidential election," and that the Salaries & Expenses request sought "all financial records of Durham's Review."  This December 16, 2019 telephone call was subsequently memorialized in an email with Plaintiff dated December 17, 2019, and attached hereto as Exhibit G.

8. On January 27, 2020, Plaintiff filed suit. See Complaint, ECF No. 1.

9. By letter dated May 22, 2020, OIP provided a final response to the Travel Costs request. OIP informed Plaintiff that any records responsive to this request relate to an ongoing investigation, the release of which could reasonably be expected to interfere with enforcement proceedings, and should therefore be withheld in full pursuant to Exemption 7(A), with Exemptions 6 and 7(C) also applying in part to certain information in the records responsive to this request. A copy of OIP's final response letter is attached hereto as Exhibit H.

10. Also, by letter dated May 22, 2020, OIP provided a final response to the Salaries & Expenses request. OIP informed Plaintiff that Mr. Durham's salary is determined by the Administratively Determined Pay Plan structure, he is salaried at the AD-40 Grade level, and provided a link to the Administratively Determined Pay Plan Charts, which are publicly available. Additionally, OIP informed Plaintiff that any other records responsive to this request relate to an ongoing investigation, the release of which could reasonably be expected to interfere with enforcement proceedings, and should therefore be withheld in full pursuant to Exemption 7(A), with Exemptions 6 and 7(C) also applying in part to certain information in the records responsive to this request. A copy of OIP's final response letter is attached hereto as Exhibit I.

## Searches Conducted In Response to Plaintiff's Requests

11. As mentioned supra in paragraph 1, OIP processes FOIA requests on behalf of itself and six senior leadership offices of the Department of Justice. OIP makes determinations upon receipt of a FOIA request, both as to the appropriate senior leadership office(s) in which to conduct initial records searches and the records repositories and search methods to use in conducting records searches on behalf of the designated senior leadership office(s). Assessments of where responsive records are likely maintained are based on a review of the content and text of the request itself and the nature of the records sought therein, as well as OIP's familiarity with the types and location of records that each senior leadership office maintains, discussions with knowledgeable personnel in the senior leadership office(s), and any research that OIP staff may conduct on the subject matter of the request.

12. In this instance, OIP noted that Plaintiff's two requests sought respectively, records "sufficient to show the detailed cost breakdowns for trips," and "records of budgets, expenses, salaries, and costs" related to the Review. As an initial step, OIP reached out to OAG and DOJ's Justice Management Division (JMD) to determine how the Review was being funded. JMD provides advice and assistance to senior management officials relating to basic Department policy for budget and financial management, personnel management and training, facilities, procurement, equal employment opportunity, information processing, records management, security, and all other matters pertaining to organization, management, and administration. Within JMD, the Finance Staff formulates and establishes Department-wide accounting policies, procedures, and financial systems to support planning, programming, budgeting, accounting, and other financial management activities, as well as providing payroll accounting services for all Department employees.[2] In this capacity, JMD's Finance Staff maintains the E2 Solutions system for the Department. E2 Solutions is the Department's end-to-end Travel & Expense management solution procured under the U.S. General Services Administration (GSA) E-Gov Travel Service 2 Government wide master contract.[3] In short, E2 Solutions is the operational, payment, and system of records for the Department's employee travel, with the exception of the Federal Bureau of Investigation (FBI), which separately processes its employees' travel and expenses. Additionally, JMD's Human Resources Staff[4] utilizes the National Finance Center (NFC) for its payroll services. NFC is an Office of Personnel Management (OPM)-certified Human Resources Shared Service Center, which includes as one of its products the Payroll and Personnel System (PPS). The PPS houses payroll and salary data for all employees within the Department of Justice and its associated agencies.[5]

---

[2] https://www.justice.gov/jmd/about-division
[3] https://www.gsa.gov/travel/agency-services/egov-travel-services-ets/egov-travel-service-2-ets2
[4] https://www.justice.gov/jmd/about-division
[5] The Federal Bureau of Investigation, the Drug Enforcement Administration, the United States Marshals Service, the Bureau of Prisons, and the Bureau of Alcohol, Tobacco, Firearms & Explosives.

13. As a result of these discussions, OIP learned, and, as was disclosed to Congress in the June 10, 2019 letter by Assistant Attorney General Stephen E. Boyd, that the Review is funded out of the existing U.S. Attorneys Salaries and Expenses appropriation.[6] See Exhibit C. Because the Review is funded out of existing appropriations, JMD cannot specifically identify whether a given expense was, or was not, incurred in furtherance of the Review because the stated purpose for each individual expense is not separately tracked. The one exception is for travel expenses managed through E2 Solutions, and general salary information maintained in NFC. These systems track information by individual official, so, by identifying relevant official(s), their travel expenses and salary information can be extracted from E2 Solutions or NFC, respectively. Similarly, because the Review was funded out of the existing U.S. Attorneys Salaries and Expenses appropriation, with the exception of any potentially responsive travel by the Attorney General, data on the travel costs, expenses, and salaries of Department officials on the Review would be most likely located with the home United States Attorney's Offices for those officials. Nonetheless, in the interest of fully responding to Plaintiff's requests, at its discretion, OIP provided JMD the names of individuals assigned to the Review that OIP had identified in the course of responding to this and other related FOIA requests as of the date on which OIP initiated its search, and asked JMD to provide all travel costs and salary data from the E2 Solutions and NFC systems for these identified individuals, as well as for the Attorney General.[7] To ensure that all possibly responsive records were included, JMD provided data from February 14, 2019 through March 19, 2020, the date on which OIP made its request to JMD.[8] As a result of these searches, JMD, through its Finance and Human Resource Staffs, provided spreadsheets, totaling approximately 60 PDF pages, of potentially responsive travel cost data

---

[6] For Fiscal Year 2020, the Department of Justice received appropriations through the "Consolidated Appropriations Act, 2020," which includes a specific appropriation for "salaries and expenses, united states attorneys," which is to be used for the "necessary expenses of the Offices of the United States Attorneys." See Pub. L. No. 116-93, 93, 133 Stat. 2317 (2020).

[7] OIP notes that, to the extent the Review consists of full-time Department of Justice officials not hired specifically to assist the Review, those salaries are not direct costs of the Review. However, OIP requested salary data for all members of the Review it had identified.

[8] Attorney General Barr was confirmed by the United States Senate on February 14, 2019.

maintained in E2 Solutions, as well as salary data maintained in the NFC system for officials assigned to the Review.  See ECF No. 8.

14. In addition, OIP and EOUSA coordinated their searches for the Salaries & Expenses request to ensure that all responsive information in the possession of the Department was located.  EOUSA worked directly with the United States Attorney's Office for the District of Connecticut (USAO-CT) to determine what information responsive to Plaintiff's Salaries & Expenses request was maintained by USAO-CT.  As noted supra, U.S. Attorney Durham, the U.S. Attorney for USAO-CT, was appointed to conduct the Review and the Review expenses are funded out of the U.S. Attorneys Salaries and Expenses appropriation.  Through its discussions with USAO-CT, EOUSA learned that, within the USAO-CT appropriation, funding for the Review was tracked through a specific account at USAO-CT for special investigations.  To respond to Plaintiff's request, EOUSA requested that USAO-CT run a report of its accounting system of all expenses charged to the account set up for the Review.  The search conducted by USAO-CT is described in detail, in the Declaration of John Larson, attached to this Motion for Summary Judgement.  See Larson Decl.¶¶ 1-8.  As discussed in EOUSA's declaration attached to this Motion for Summary Judgment, after reviewing the results of USAO-CT's search, EOUSA withheld in full all responsive records pursuant to Exemption 7(A), along with Exemptions 5, 6, 7(C), and 7(F) for certain information.  See Jolly Decl. ¶ 5.

### Summary and Adequacy of DOJ's Records Searches

15. In sum, the searches conducted by OIP and EOUSA in response to Plaintiff's FOIA requests reflect the dynamic and comprehensive search processes that DOJ typically utilizes to process FOIA requests.  OIP made direct inquires to OAG as well as JMD to identify how the Review is funded.  As a result of its inquiries, OIP learned that the Review is funded through existing Department appropriations for the Offices of the United States Attorneys.  In order to collect the most comprehensive data and information responsive to Plaintiff's requests, OIP provided JMD Finance Staff with a list of names of individuals assigned to the Review that OIP had identified in the course of responding to this and other related FOIA requests as of the

date on which OIP initiated its search and asked JMD Finance and Human Resources Staff to extract from E2 Solutions and NFC travel costs and salary data maintainied by those systems, incurred between February 14, 2019 and March 19, 2020.  OIP's search request also included all travel costs incurred by the Attorney General during this time period.  Because the Review was funded through existing Department appropriations and because E2 Solutions and NFC systems are the official repositories for travel expenses and salary data for the Department (excepting travel and expenses incurred by FBI employees, which is separately processed by the FBI), OIP reasonably determined that these were the appropriate systems to search and that additional searches would only result in duplicative information.  Likewise, EOUSA worked directly with USAO-CT to determine how USAO-CT was tracking expenses incurred by the Review.  EOUSA learned that USAO-CT had established a specific account for the Review.  Because USAO-CT established a specific identifiable account to track Review travel expenses, including salary information, EOUSA reasonably concluded that a search of the expenses charged to this specific account would locate all responsive identifiable information in the possession of USAO-CT, and additional searches would only result in the discovery of duplicative information.  While much of the information collected by OIP and EOUSA is likely duplicative of what the other office located, OIP and EOUSA determined that this joint approach for the Travel Costs and Salaries & Expenses requests would most likely uncover all responsive information maintained by the Department.

      16.    Based on my experience with the Department, my familiarity with the records maintained by the leadership offices, discussions with knowledgeable staff, as well as my understanding of the scope of Plaintiff's requests, and information gathered from the documents themselves, I have determined that the searches were reasonably calculated to uncover all potentially responsive records and that OIP and EOUSA searched the Department files most likely to contain information responsive to Plaintiff's requests.

**Explanation of Information Withheld By the Department of Justice**

17. This declaration addresses all withholdings that were made by OIP in response to Plaintiff's FOIA requests (the Travel Costs and the Salaries & Expenses requests). OIP withheld in full all records responsive to these requests pursuant to Exemption 7(A), with Exemptions 6 and 7(C) additionally protecting specific information within these records.[9] Specifically, OIP withheld two Microsoft Excel spreadsheets in response to Plaintiff's requests. One spreadsheet lists the names and salaries of members of the Review, as well as their home office. The second spreadsheet lists information regarding specific travel expenses maintained in E2 Solutions, some of which were incurred by Department officials in furtherance of the Review, including the identity of the official(s) making the trip, the trip's duration, the destination, and a particularized breakdown of the total cost of each trip (transportation, lodging, and meals & incidental expenses). In addition, this Declaration will address the basis for the Exemption 7(A) withholdings made by EOUSA in its response to the Salaries & Expenses request (EOUSA-2020-000797). EOUSA's own declaration will address the other withholdings taken in their response. See Jolly Decl.¶¶ 9-22. EOUSA withheld one Microsoft Excel spreadsheet, separated into two tabs, in response to Plaintiff's Salaries & Expenses request: One tab contains the identities and salaries of USAO-CT investigators on the Review, and the second tab lists specific information regarding travel expenses incurred in furtherance of the Review, including the identity of the person making the trip, the trip's duration, the destination, and a total cost of the trip.

Exemption 7

18. FOIA Exemption 7 exempts from disclosure "records or information compiled for law enforcement purposes" when disclosure could reasonably be expected to cause one of the harms articulated in the enumerated subparts of the exemption. 5 U.S.C. § 552(b)(7).

---

[9] As noted supra, OIP previously disclosed United States Attorney John H. Durham's salary to Plaintiff. See Exhibit I.

*Exemption 7: Threshold*

19. As a threshold matter, information withheld pursuant to Exemption 7 and its subparts must be or have been compiled for law enforcement purposes. The records withheld in response to Plaintiff's FOIA requests contain salary and travel expense data for Department employees in furtherance of the Review being conducted by United States Attorney John H. Durham. The Review is authorized by Attorney General Barr pursuant to his broad statutory authority to direct the work of Department employees, including the United States Attorneys (see, e.g., 28 U.S.C. §§ 501-530, §§ 541-550 (2018)), as well as specifically by U.S. Attorney John Durham's February 6, 2020 appointment as a Special Attorney to the Attorney General pursuant to 28 U.S.C.§ 515. See Exhibit D. As discussed supra, U.S. Attorney Durham was directed to review certain activities involving the campaigns in the 2016 U.S. presidential election and certain related matters, and was subsequently authorized to bring criminal charges, if appropriate, in the United States District Court for the District Columbia. These records contain salary and travel expense data incurred by the Department officials in furtherance of the Review, and, thus, have a rational nexus to the Review's law enforcement activities. Thus, all of these records were compiled for law enforcement purposes, and the information that OIP and EOUSA have protected pursuant to Exemption 7(A), as well as the information that OIP protected pursuant to Exemption 7(C), readily meet the exemption's threshold requirement. I make these determinations based on conversations with Department attorneys knowledgeable about the Review's activities and pending investigations.

Exemption 7(A)

20. FOIA Exemption 7(A) protects records or information "compiled for law enforcement purposes" when disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). Information may be withheld pursuant to Exemption 7(A) when it is established that (1) the information relates to pending or prospective investigations or other enforcement proceedings, and (2) disclosure of the information could reasonably be expected to interfere with the identified enforcement proceedings.

21.     The information withheld pursuant to 7(A) in response to Plaintiff's Travel Costs and Salaries & Expenses requests pertains to pending law enforcement investigations and prosecutions being conducted by the Review.

*Pending Investigations & Prosecutions*

22.     The information withheld pursuant to Exemption 7(A) in response to Plaintiff's FOIA requests, consisting of salary information for members of the Review and travel expenses incurred in furtherance of the Review, would reasonably be expected to interfere with pending criminal investigations, if released. The information contained in the records withheld by OIP and EOUSA has neither been officially acknowledged nor confirmed, including the identities of the officials comprising the Review,[10] their salaries, and the "detailed breakdown" of costs regarding any trips they may have taken as part of the Review. Moreover, the information contained in EOUSA's spreadsheet includes the travel costs for and the identities of witnesses assisting the Review. Releasing these non-public details about the specifics and contours of the Review's investigatory activities, and/or whether specific trips taken by the Attorney General were related to the Review, would risk undermining any ongoing criminal investigations or prosecutions.

23.     Any ongoing criminal investigations would be adversely affected by revealing the scope, direction, and nature of the investigations. These records contain specific dollar amounts and numerical figures concerning the number and types of staff working for the Review and specific travel costs incurred, which reveal the amount of and the extent to which the Department deployed resources necessary, at the time, to continue the Review's ongoing enforcement proceedings. Moreover, while individually each discrete dollar amount or piece of numerical information may seem inconsequential, taken together, someone would be able to ascertain substantive information about the Review, including the existence or frequency of domestic or

---

[10] OIP notes that subsequent to the final responses it issued in response to Plaintiff's FOIA request, on August 14, 2020, the Review instituted criminal proceedings in the United States District Court for the District of Columbia, and as a result, two members of the Review have been confirmed: Special Assistant United States Attorney for the District of Columbia Neeraj N. Patel, and Assistant United States Attorney for the District of Columbia, Anthony Scarpelli.

11

foreign travel, the release of which would reveal details about the scope, direction, and nature of the investigation, including the extent to which witnesses or persons of interest are located in different geographical locations.  Similarly, Department salaries conform to a publicly available schedule and are based in part on locality and years of service.  Release of the salaries of members of the Review would therefore not only reveal the exact number of officials on the Review (which itself would disclose details about the scope and breadth of the investigation) but also would provide information about their locality, relative experience, and the occupational composition of the Review, all of which combined speaks to the scope, direction, and nature of the investigation.  To the extent these records actually identify members of the Review, releasing these remaining unacknowledged officials, including the precise number of officials conducting the Review, their salaries, home offices, and identities, any targets of the pending investigations would permit someone to surmise the resources available to the investigation, areas of investigatory interest of the Review (based on the expertise of specific members of the Review ), which could risk influencing, compromising, or tainting information that may be obtained from the targets or by other sources, risking fabrication or falsification of future testimony, destruction or alteration of evidence, or attempts to intimidate or influence potential sources.  Additionally, release of this information would reveal the Review's prediction about the future scope and anticipated directions of the ongoing investigation.  Moreover, there is intense public and media scrutiny of the activities of the Review.  Recent experience demonstrates that individuals conducting high-profile DOJ investigations, such as this one, may be surveilled in an effort to obtain non-public information about a pending investigation, such as the identities of cooperating witnesses or potential defendants, the timing of the filing of charges, and the location of relevant evidence.  Such attempts at surveillance have the effect of obstructing the investigation, for example, by frustrating investigators' efforts to obtain evidence and secure cooperation.  Criminal investigators are more effective when their movements, meetings, and actions are not broadcast in real time.  Thus, release of any information that would assist in piecing together the identities of as-yet unidentified investigators would interfere with the ongoing investigation.

Moreover, as to historical travel records, disclosure of likely locations of relevant evidence and/or witnesses could lead to the destruction/unavailability of evidence, cause existing witnesses to cease cooperation, and/or deter other witnesses from coming forward.

24. Likewise, and as noted supra, to date, the Review has charged one defendant by criminal information and remains ongoing. Release of information about the Review's activities would reveal the scope, limits, and direction of the ongoing investigations and prosecutions, which would allow the indicted individual and others (e.g., potential defendants) to circumvent efforts to bring them to justice by giving them an unprecedented insight into the strengths and weaknesses of the investigations and resulting information and evidence utilized in their indictments and criminal cases. Disclosing information beyond what has generally been officially, publicly disclosed also risks that adversarial third parties could use that information to fabricate or destroy evidence, tamper with, improperly influence or intimidate witnesses, in an effort to disrupt the criminal justice process.

25. All of the information protected pursuant to Exemption 7(A) relates to ongoing criminal investigations being pursued by the Department. Release of any additional material beyond what has already been disclosed in the public domain would risk interference with these law enforcement matters for the reasons detailed supra.

*Segregation of Non-Exempt Information*

26. OIP has thoroughly reviewed the information withheld from release on the basis of Exemption 7(A), and has determined releasing any further information could reasonably be expected to interfere with enforcement proceedings.

Exemptions 6 and 7 (C)

27. Exemptions 6 and 7(C) of the FOIA protect against unwarranted invasions of individuals' personal privacy. Exemption 6 protects information the release of which "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects information "compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." All

of the information withheld in the records at issue in this case on personal privacy grounds is protected by both Exemptions 6 and 7(C).

28. When determining whether to withhold information pursuant to either Exemption 6 or 7(C), OIP assesses whether there is a more than de minimis privacy interest at stake, whether there is any "FOIA public interest" in disclosure, and, if so, balances any such interest to determine whether withholding the information is appropriate. The balancing test for Exemption 6 uses a heightened standard, "would constitute a clearly unwarranted invasion of personal privacy," while the balancing test for Exemption 7(C) uses a lower standard, "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

29. As stated supra, the records that OIP withheld in response to Plaintiff's Travel Costs and Salaries & Expenses requests were clearly "compiled for law enforcement purposes." See supra ¶ 19. Accordingly, the Exemption 7(C) standard is applicable to the privacy redactions made in the records. Nonetheless, OIP has determined that the heightened Exemption 6 balancing standard is also met for all of the information withheld to protect individuals' personal privacy.

30. In conducting the balancing analysis for both Exemptions 6 and 7(C), the FOIA public interest is limited to information which would shed direct light on DOJ's performance of its mission: to enforce the law and defend the interests of the United States according to the law; to ensure public safety against threats foreign and domestic; to provide federal leadership in preventing and controlling crime; to seek just punishment for those guilty of unlawful behavior; and to ensure fair and impartial administration of justice for all Americans.

31. Within the records that OIP withheld in full, OIP withheld the names and identifying information of members of the Review who have not been publicly acknowledged by the Department in connection with their roles. As noted supra, subsequent to the issuance of the final responses to Plaintiff's FOIA requests, on August 14, 2020, the Review instituted criminal proceedings in the United States District Court for the District of Columbia, and as a result, two members of the Review have been confirmed: Special Assistant United States Attorney for the

District of Columbia Neeraj N. Patel, and Assistant United States Attorney for the District of Columbia, Anthony Scarpelli.

32. As noted supra, in order to withhold information pursuant to Exemption 6 or 7(C), a balancing of the privacy interests of the individuals against any FOIA public interest in disclosure must weigh in favor of non-disclosure.  With respect to the remaining members of the Review, due to the inherent sensitive nature of the Review's work, the information to which they have access to regarding criminal investigations, as well as the heightened public scrutiny and partisan political attacks that occur when any new fact is made public, disclosure of the remaining unacknowledged identities of Department personnel involved with the Review could cause them to become targets of harassing inquiries or questioning as to the scope of their involvement in matters that are described in these records.

33. In assessing whether there is a FOIA public interest in disclosure of the members of the Review, OIP considered the Department's mission and whether revealing the identities of these individuals sheds light on the Department's operations and activities.  OIP determined that releasing the individuals' identities would not significantly enhance the public's understanding of how the Department carries out its duties.

34. I have determined that the significant privacy interests of these individuals outweigh the dearth of FOIA public interest in disclosure of their identities.  As such, this information has been withheld pursuant to FOIA Exemptions 6 and 7(C) because its release would constitute a clearly unwarranted invasion of the personal privacy of these individuals.

*Segregation of Non-Exempt Information*

35. In each instance where information was withheld from plaintiffs pursuant to Exemptions 6 and 7(C), OIP determined that the individuals' privacy interests were not outweighed by the FOIA public interest in disclosure of that information.  Every effort has been made to release all segregable information to plaintiffs without invading the privacy interests of individuals who were mentioned in the records discussed supra.  However, because information

16

protected by Exemptions 6 and 7(C) fell within material protected under Exemption 7(A), as detailed supra, no further segregation was possible.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Vanessa R. Brinkmann

Executed this 11th day of September 2020.