**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON,

       Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE,

       Defendant.

No. 20-0212 (EGS)

<u>**MEMORANDUM OPINION**</u>

I.    **Introduction**

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") has sued Defendant U.S. Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. *See* Compl., ECF No. 1 ¶ 1.[1] CREW challenges DOJ's decision to withhold responsive records—specifically, three spreadsheets of information—pursuant to various FOIA exemptions. *See id.*

Pending before the Court are DOJ's Motion for Summary Judgment, *see* Def.'s Mot. Summ. J., ECF No. 16; and CREW's

---

[1] When citing electronic filings throughout this Opinion, the Court refers to the ECF page numbers, not the page numbers of the filed documents.

1

Motion for Partial Summary Judgment, *see* Pl.'s Cross-Mot. Partial Summ. J., ECF No. 18. Upon careful consideration of the motions, the oppositions, and replies thereto, the applicable law, and the entire record herein, the Court hereby **GRANTS** DOJ's Motion for Summary Judgment and **DENIES** CREW's Motion for Partial Summary Judgment.

## II.   Background

### A. Factual

In a letter dated June 10, 2019, DOJ disclosed to Congress that it was examining certain activities involving the campaigns in the 2016 U.S. presidential election and other related matters (the "Review"). Def.'s Reply Counter-Statement of Material Facts to Which There is No Genuine Issue ("SOMF"), ECF No. 21-1 ¶ 1. The letter confirmed that U.S. Attorney General William P. Barr ("Attorney General Barr") had directed U.S. Attorney for the District of Connecticut John H. Durham ("U.S. Attorney Durham") to lead this Review, which was funded out of the U.S. Attorneys Salaries and Expenses appropriation. *Id.* ¶¶ 2-3.

CREW submitted two FOIA requests to learn more about the resources DOJ was expending on the Review. *See id.* ¶¶ 4-5. CREW submitted its first request to DOJ's Office of Information Policy ("OIP") on November 19, 2019. *Id.* ¶ 4. Through this FOIA request, CREW sought disclosure of "documents sufficient to show the detailed cost breakdowns for trips as they relate to John H.

Durham's review relating to the origins of the government's investigation into interference in the 2016 election." *Id.* (quoting Ex. A, ECF No. 16-7 at 1).

CREW submitted a second FOIA request—this time to DOJ's Executive Office for United States Attorneys ("EOUSA") and to OIP on December 5, 2019. *Id.* ¶ 5. In its letter, CREW requested "copies of all records of budgets, expenses, salaries, and costs of the investigation being conducted by United States Attorney John H. Durham." *Id.* (quoting Ex. B, ECF No. 16-8 at 1). Soon thereafter, EOUSA and OIP acknowledged receipt of CREW's FOIA requests. *See id.* ¶¶ 6-7.

On May 22, 2020, OIP sent CREW two letters responding to the FOIA requests. *Id.* ¶ 14. OIP stated that it would withhold in full all records responsive to CREW's two FOIA requests. *Id.* ¶ 15. OIP's responsive records consist of two spreadsheets. *Id.* ¶ 20. The first spreadsheet lists the names, salaries, and home offices of members of the Review. *Id.* ¶ 21. The second spreadsheet identifies travel information: the identity of the official(s) making the trip, the duration of the trip, the destination, and a particularized breakdown of the total cost of each trip (transportation, lodging, and meals and incidental expenses). *Id.* ¶ 22. OIP claimed that it may withhold these two spreadsheets in full pursuant to FOIA Exemption 7(A) and that it

may withhold certain information in the records pursuant to FOIA
Exemptions 6 and 7(C). *Id.* ¶ 15.

On July 1, 2020, EOUSA provided CREW with a letter stating
its final determination. *Id.* ¶ 16. EOUSA stated that it would
withhold in full its responsive record: one spreadsheet with two
tabs. *Id.* ¶ 23. The first tab lists the identities and salaries
of investigators for the Review. *Id.* The second tab lists
information about the Review's travel expenses: the identity of
the traveler, the duration of the trip, the destination, and the
total cost of the trip. *Id.* EOUSA claimed that nondisclosure of
the entire spreadsheet is appropriate pursuant to FOIA Exemption
7(A) and that FOIA Exemptions 5, 6, 7(C), 7(D), and 7(F) protect
certain information from disclosure. *Id.* ¶ 17.

Both EOUSA and OIP reviewed the information that they
withheld in their responses to CREW, and both concluded that
they would not be able to segregate any information in the
responsive records without revealing protected information. *See
id.* ¶¶ 18-19.

**B. Procedural**

On September 11, 2020, DOJ filed its Motion for Summary
Judgment. *See* Def.'s Mot. Summ. J., ECF No. 16; Mem. P. & A. in
Supp. of Def.'s Mot. Summ. J. ("Def.'s Mot."), ECF No. 16-1. On
October 16, 2020, CREW filed its opposition and Cross-Motion for
Partial Summary Judgment. *See* Pl.'s Cross-Mot. Partial Summ. J.,

ECF No. 18; Mem. P. & A. in Opp'n to Def.'s Mot. Summ. J. & in Supp. of Pl.'s Mot. Summ. J. ("Pl.'s Mot."), ECF No. 18-1. DOJ filed its opposition to CREW's motion and reply in support of its own motion on November 6, 2020, *see* Def.'s Reply in Supp. of its Mot. Summ. J. & Opp'n to Pl.'s Cross-Mot. Summ. J. ("Def.'s Opp'n"), ECF No. 21; and CREW filed its reply on November 20, 2020, *see* Pl.'s Reply Mem. in Supp. of its Mot. Summ. J. ("Pl.'s Reply"), ECF No. 23.

The motions are now ripe and ready for adjudication.

## III. Legal Standard

### A. Summary Judgment

FOIA cases are typically and appropriately decided on motions for summary judgment. *Gold Anti-Tr. Action Comm., Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011) (citation and internal quotation marks omitted). Summary judgment is warranted "if the movant shows [by affidavit or other admissible evidence] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party opposing a summary judgment motion must show that a genuine factual issue exists by "(A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). Any factual assertions in the moving party's

5

affidavits will be accepted as true unless the opposing party submits his own affidavits or other documentary evidence contradicting the assertion. *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992). However, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

An agency has the burden of demonstrating that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (citation and internal quotation marks omitted). In reviewing a summary judgment motion in the FOIA context, the court must conduct a *de novo* review of the record, *see* 5 U.S.C. § 552(a)(4)(B); but may rely on agency declarations, *see SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Agency affidavits or declarations that are "relatively detailed and non-conclusory" are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (citation and internal quotation marks omitted). The Court may award summary judgment solely on the basis of information provided by the department or agency in

declarations when the declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Mil. Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (citation and internal quotation marks omitted).

**B. FOIA Exemptions**

Congress enacted FOIA to "open up the workings of government to public scrutiny through the disclosure of government records." *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 97 (D.D.C. 2019) (quoting *Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984) (internal quotation marks and alterations omitted)). Although the legislation is aimed toward "open[ness] . . . of government," *id.*; Congress acknowledged that "legitimate governmental and private interests could be harmed by release of certain types of information," *Critical Mass Energy Project v. Nuclear Regul. Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (citation and internal quotation marks omitted). As such, pursuant to FOIA's nine exemptions, an agency may withhold requested information. 5 U.S.C. § 552(b)(1)-(9). However, because FOIA established a strong presumption in favor of disclosure, requested material must be disclosed unless it falls squarely within one of the exemptions. *See Burka v. U.S.*

*Dep't of Health & Hum. Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996).

The agency bears the burden of justifying any withholding. *See Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 74 (D.D.C. 2007). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) (per curiam) (citation and internal quotation marks omitted).

## IV.  Analysis

### A. EOUSA and OIP Conducted Reasonably Adequate Searches

DOJ argues that EOUSA and OIP both "'made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce information requested.'" Def.'s Mot., ECF No. 16-1 at 11 (quoting *Clemente v. FBI*, 867 F.3d 111, 117 (D.C. Cir. 2017) (citation and internal quotation marks omitted)). CREW does not contest the adequacy of EOUSA or OIP's searches. Pl.'s Mot., ECF No. 18-1 at 11 n.1.

Nevertheless, the Court has "an independent duty to determine whether the agency's search for responsive records was adequate." *Tokar v. U.S. Dep't of Just.*, 304 F. Supp. 3d 81, 93 (D.D.C. 2018) (citing *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507-08 (D.C. Cir. 2016)). For DOJ to prevail on summary

judgment in a FOIA case, "the defending 'agency must show beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Morley v. C.I.A.*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Weisberg v. U.S. Dep't of Just.*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). It "'must show that it made a good faith effort,'" *Reps. Comm. for Freedom of Press v. Fed. Bureau of Investigation*, 877 F.3d 399, 402 (D.C. Cir. 2017) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)); which it may "establish . . . by submitting reasonably detailed, nonconclusory affidavits describing its efforts," *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 318 (D.C. Cir. 2006).

Here, DOJ has submitted affidavits from Ms. Brinkmann, Mr. Jolly, and Mr. Larson to describe the searches EOUSA and OIP conducted in response to CREW's FOIA request. *See* Brinkmann Decl., ECF No. 16-3 ¶¶ 6-16; Jolly Decl., ECF No. 16-4 ¶ 6; Larson Decl., ECF No. 16-5 ¶¶ 7-8. The Court finds that the affidavit submitted by Ms. Brinkmann "specif[ies] 'what records were searched, by whom, and through what process.'" *Rodriguez v. DOD*, 236 F. Supp. 3d 26, 35 (D.D.C. 2017) (quoting *Steinberg v. DOJ*, 23 F.3d 548, 552 (D.C. Cir. 1994)); *see* Brinkmann Decl., ECF No. 16-3 ¶¶ 6-16. Further, the affidavit sufficiently "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive

9

materials (if such records exist) were searched." *Reps. Comm.*, 877 F.3d at 402 (quoting *Oglesby*, 920 F.2d at 68); *see* Brinkmann Decl., ECF No. 16-3 ¶¶ 6-16. This information is sufficient to satisfy the Court's inquiry. *See Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." (citation omitted)).

DOJ has made its *prima facie* case, *see Reps. Comm.*, 877 F.3d at 402; and CREW raises no opposition to that showing. Accordingly, the Court **GRANTS** Defendant DOJ's Motion for Summary Judgment regarding the adequacy of EOUSA and OIP's searches.

### B. FOIA Exemptions

DOJ asserts that EOUSA and OIP properly withheld responsive records pursuant to various FOIA exemptions. *See* Def.'s Mot., ECF No. 16-1 at 11-20. CREW opposes the application of each FOIA exemption to withhold travel destinations, dollar amounts of investigation expenses, and personnel salaries. *See* Pl.'s Mot., ECF No. 18-1 at 12-16.

The records at issue are three spreadsheets. Two contain the following information: (1) the names and salaries of the members of the Review and their home office, Def.'s Mot., ECF No. 16-1 at 11 (citing Brinkmann Decl., ECF No. 16-3 ¶ 17); and (2) "travel expense information incurred by members of the

10

Review, including the identity of the travelers, the trip's duration, the destination and a breakdown of cost associated with each trip," *id.* (citing Brinkmann Decl., ECF No. 16-3 ¶ 17). These spreadsheets were withheld in full pursuant to FOIA Exemption 7(A), and also pursuant to Exemptions 6 and 7(C) for specific information in them. *Id.* The third spreadsheet contains the identities and salaries of investigators from the U.S. Attorney's Office for the District of Connecticut, travel and travel cost information, and witness identifying information. *Id.* (citing Larson Decl., ECF No. 16-5 ¶¶ 6-8). This spreadsheet was withheld in full pursuant to FOIA Exemption 7(A), and also pursuant to Exemptions 5, 6, 7(C), and 7(F) for specific information in the document. *Id.*

### 1. The Information Contained in the Spreadsheets Was Compiled for Law Enforcement Purposes

To invoke a subpart of Exemption 7, DOJ must first demonstrate that the records were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7). Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm. 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). In considering whether records were compiled for law enforcement purposes, "'the focus is on how and under what circumstances the requested

files were compiled and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" *Clemente*, 867 F.3d at 119 (quoting *Jefferson v. Dep't of Just., Off. of Pro. Resp.*, 284 F.3d 172, 176-77 (D.C. Cir. 2002)). The agency will meet its threshold requirement by "establish[ing] a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an individual or incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (citations and internal quotation marks omitted).

DOJ claims that it has met this requirement, arguing that the information in the three spreadsheets is related to the Review led by U.S. Attorney Durham, whom Attorney General Barr authorized to conduct the Review and bring any appropriate criminal charges. *See* Def.'s Mot., ECF No. 16-1 at 12-13. The spreadsheets contain the identities and salaries of the members of the Review and details about their travel and related expenditures while investigating potential violations of federal law as well as the identities of witnesses for the Review. *See id.* at 12. DOJ asserts that this information has "a direct and substantial nexus to the ongoing investigation and the underlying threshold law enforcement purpose." Def.'s Opp'n, ECF No. 21 at 3.

A record is compiled for law enforcement purposes so long as there is: (1) a "rational nexus" between the record and the agency's law enforcement duties; and (2) a "connection" between the record and a possible violation of federal law. *Blackwell*, 646 F.3d at 40. Here, the records satisfy both requirements. First, there is a rational "nexus" between the records and the agency's law enforcement duties. The records contain information about the salaries, travel and other expenditures, and staffing details of the members of the Review. Brinkmann Decl., ECF No. 16-3 ¶ 19. The Review needs to track the identities of its members as well as its travel and other expenses to maintain an organized investigation. Second, there is a connection between the records and a possible violation of federal law because the members of the Review—a law enforcement investigation being conducted by DOJ—are investigating possible violations of federal law.

CREW argues that DOJ has not met its initial burden because the record demonstrates that the spreadsheets were not created for law enforcement purposes but instead for administrative and FOIA processing purposes. *See* Pl.'s Mot., ECF No. 18-1 at 12. As to the first argument, the cases CREW cites are distinguishable because in each of those cases, the court concluded that the connection between the records and whether they had been compiled for law enforcement purposes was too attenuated for the

13

records to come within the scope of Exemption 7. *See Henderson v. U.S. Dep't of Just.*, 157 F. Supp. 3d 42, 49-50 (D.D.C. 2016) (holding that stenographic expense file had not been compiled for law enforcement purposes because the only tie to law enforcement appeared to be "the apparent connection between stenographic services and the EOUSA's law enforcement function in prosecuting plaintiff's criminal case"); *Maydak v. U.S. Dep't of Just.*, 362 F. Supp. 2d 316, 322 (D.D.C. 2005)(holding that the agency had not shown that a list of staff names and titles at a particular corrections institution was compiled for law enforcement purposes when the agency withheld the information from BOP inmates, but released the names and titles to the general public), *order vacated in part*, No. CV 00-0562 (RBW), 2008 WL 11497858 (D.D.C. Dec. 3, 2008); *Leadership Conf. on Civ. Rts. v. Gonzales*, 404 F. Supp. 2d 246, 257 (D.D.C. 2005) (concluding that "there [wa]s no evidence that the paralegal names and work numbers were compiled for law enforcement purposes" when "the references to paralegals' names and work numbers are made to identify to prosecutors the person to whom their voting initiative reports and records should be sent to"). Here, by contrast, DOJ has demonstrated that the records are directly related to activities in furtherance of the Review.

With regard to CREW's argument that the records were compiled for FOIA processing purposes, it is not fatal that DOJ

14

has compiled information it stores elsewhere into spreadsheets to fulfill this FOIA request. The Supreme Court has instructed that "information initially contained in a record made for law enforcement purposes continues to meet the threshold requirements of Exemption 7 where that recorded information is reproduced or summarized in a new document prepared for a no[n]-law-enforcement purpose." *Abramson*, 456 U.S. at 631–32.

For the reasons above, the Court concludes that DOJ has met the threshold for invoking Exemption 7.

### 2. The Records Were Properly Withheld Pursuant to FOIA Exemption 7(A)

Exemption 7(A) permits an agency to withhold records from disclosure if the records were "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). "The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." *Maydak v. U.S. Dep't of Just.*, 218 F.3d 760, 762 (D.C. Cir. 2000) (citations omitted). To successfully invoke the exemption, the agency must show that

"disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated." *Mapother v. Dep't of Just.*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis omitted).

There is no dispute that the Review constitutes a pending or reasonably anticipated law enforcement proceeding within the meaning of FOIA Exemption 7(A). An ongoing investigation that is likely to lead to future enforcement proceedings is enough to invoke the exemption. *See Ctr. for Nat. Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 926 (D.C. Cir. 2003). The Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has repeatedly explained that "'[s]o long as the investigation continues to gather evidence for a possible future criminal case, and that case would be jeopardized by the premature release of that evidence, Exemption 7(A) applies.'" *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1098 (D.C. Cir. 2014) (quoting *Juarez v. Dep't of Just.*, 518 F.3d 54, 59 (D.C. Cir. 2008)). Thus, the Review's investigation—which has already resulted in criminal proceedings in the District Court for the District of Columbia—meets the latter two requirements for FOIA Exemption 7(A).

"CREW [does] not contest[] DOJ's withholding of personally identifying information in OIP and EOUSA's spreadsheets, including the names of witnesses or subordinate law enforcement

16

officers, their home or office locations, or other specific
addresses or locations." Pl.'s Mot., ECF No. 18-1 at 15.
Accordingly, CREW has clarified that it only seeks segregable
salary and cost information and thus continues to seek: (1)
travel destinations, (2) dollar amounts of investigation
expenses; and (3) personnel salaries. *Id*. at 11-12. With regard
to the "dollar amount of investigation expenses," the responses
to the FOIA request indicate that this information consists of
the salary information and travel information. *See* SOMF, ECF No.
21-1 ¶¶ 21, 22, 23. Accordingly, the Court does not consider
this a separate category of information.

DOJ argues that "[t]he release of salaries, travel details
and expenditures, and staffing information related to the Review
could reasonably be expected to interfere and undermine the
Review's ongoing investigatory activities." Def.'s Mot., ECF No.
16-1 at 14. Specifically, DOJ argues that:

> 1. [R]elease of travel information—frequency
>    of domestic or foreign travel, would reveal
>    details about the scope, direction, and
>    nature of the investigation, including
>    information of where witnesses or persons
>    of interest are located.
>
> 2. [R]elease of salaries of the members of the
>    Review would not only reveal the exact
>    number of officials on the Review—which in
>    [and] of itself would disclose details
>    about the scope and breadth of the
>    investigation, but would also provide their
>    locality, relative experience, area of

> > expertise, and the occupational
> > composition of the Review; the combination
> > of this information speaks to the scope,
> > direction, and nature of the investigation.

*Id.* at 14-15.

Two of the cases DOJ cites provide little support for its argument. In neither *Alyeska Pipeline Serv. Co. v. EPA,* 856 F.2d 309 (D.C. Cir. 1988) nor *Swan v. SEC,* 96 F.3d 498 (D.C. Cir. 1996) were the records in any way similar to the records here. *Leopold v. CIA,* 106 F. Supp. 3d 51 (D.D.C. 2015) provides some support because the information sought there was expense information; however, the context was not Exemption 7. For its part, CREW cites no caselaw in support of its arguments that the salary, travel, and expense information is not protected by Exemption 7(A). *See* Pl.'s Mot., ECF No. 18-1 at 15; Pl.'s Reply, ECF No. 23 at 7-8.

As a general matter, "an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted). Here, it appears logical that disclosure of the travel information described *supra* "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). CREW specifically seeks travel destinations. Pl.'s Mot., ECF No. 18-1 at 15. However, disclosure of travel destinations logically could reveal "the

18

nature, scope, direction, and focus of [the] investigation[] . . . ." *Maydak*, 218 F.3d at 762. Accordingly, the travel information described *supra* is protected by Exemption 7(A).

It also appears logical that disclosure of the salaries of the members of the Review "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). CREW disputes that release of individual salaries or salaries in the aggregate would not reveal anything substantive about the scope or direction of the Review, such as who is being investigated, the potential offenses being investigated, or the expertise of individuals assigned to the investigation because CREW is unaware of any way to extrapolate from salary information the identity of a prosecutor or investigator. Pl.'s Reply, ECF No. 23 at 6. However, disclosure of individual salaries would disclose information about the scope and breadth of the Review. And because the members of the Review are compensated on a highly structured pay scale, disclosure of this information would provide the number of members of the Review, and from that information could likely be extrapolated the general professional credential of each member, such as attorney, investigator, paralegal, etc. Disclosure of this information logically could reveal at least the scope of the investigation. *See Maydak*, 218 F.3d at 762. Accordingly, the

specific salaries of each member of the Review are protected by
Exemption 7(A).

CREW cites no caselaw in support of its arguments that the
salary, travel, and expense information is not protected by
Exemption 7(A). Rather, CREW points to fact that the Office of
Special Counsel releases expenditure information without
interfering with or signaling the course of its investigation.
Pl.'s Mot., ECF No. 18-1 at 15. DOJ regulations mandate that the
Special Counsel Office release a biannual statement of costs.
*See* DOJ Order 2030.4G, *Control of Funds under Apportionment*.
These statements provide top-line totals and summaries of the
resources expended by investigators, *see id.*; breaking down
costs into various categories, such as: Personnel Compensation
and Benefits; Travel and Transportation of Persons; Rent,
Communications, and Utilities; Contractual Services; and
Supplies and Materials, *see* U.S. Dep't of Just., *Special
Counsel's Office Statement of Expenditures October 19, 2020
through March 31, 2021*. DOJ responds—and the Court agrees—that
the release of the Special Counsel information pursuant to DOJ
regulations does not mean that DOJ cannot protect similar
information in response to a FOIA request in an unrelated matter
and where DOJ demonstrates the harm that would result. Def.'s
Reply, ECF No. 21 at 5. In its concluding brief, CREW appears to
represent that it would accept similar aggregate information in

20

response to its FOIA request. *See* Pl.'s Reply, ECF No. 23 at 6
("Ascertaining the aggregate or individual salaries of those
working on the investigation might yield some insight into the
resources that DOJ is deploying."); *id.* at 7 ("Ascertaining the
dollar figures of expenses associated with the investigation"
would not be harmful in the aggregate. "In fact, if DOJ provided
the top-line figures of these expenses (which it is withholding
in addition to the line-item expenses), it would presumably
reveal even less about the substance of the Durham
investigation."). However, CREW has not requested in the
alternative that the Court order the aggregate information to be
disclosed. Accordingly, the issue has not been briefed.

For all these reasons, the Court **GRANTS** summary judgment to
DOJ with respect to the withholding of the spreadsheets under
FOIA Exemption 7(A).

### 3. FOIA Exemptions 6 and 7(C)[2]

DOJ next argues that it may properly withhold names and other identifying information about members of the Review and other law enforcement personnel pursuant to FOIA Exemptions 6 and 7(C). *See* Def.'s Mot., ECF No. 16-1 at 16.[3] CREW does not challenge the withholding of this information under any FOIA exemption. *See* Pl.'s Mot., ECF No. 18-1 at 15-16; Pl.'s Reply, ECF No. 23 at 1. Because the "Court may not grant summary judgment simply because the withholding [under a particular exemption] was not challenged," *Tokar*, 304 F. Supp. 3d at 94 n.3 (quoting *Winston & Strawn*, 843 F.3d at 505); the Court briefly considers the application of these exemptions here.

---

[2] CREW argues that "to the extent that any withholdings are supported by valid assertions of privacy interests under Exemption 6 or Exemption 7(C) that pertain to Attorney General Barr, they are outweighed by the public's interest in understanding the extent and cost of the Attorney General's highly unusual direct, personal involvement in the Durham investigation." Pl.'s Mot., ECF No. 18-1 at 18. DOJ responds that it withheld any cost information related to any alleged travel by Attorney General Barr pursuant to Exemption 7(A) and did not argue that there was a privacy interest associated with alleged travel by Attorney General Barr. Def.'s Reply, ECF No. 21 at 9. CREW did not respond to this argument. *See generally* Pl.'s Reply, ECF No. 23.

[3] DOJ acknowledges in its opening brief that the Review instituted criminal proceedings in the District Court for the District of Columbia and therefore identified two members of the Review after the agencies sent their final response to CREW's FOIA request. *See* Def.'s Mot., ECF No. 16-1 at 16 (citing Brinkmann Decl., ECF No. 16-3 ¶ 31).

FOIA Exemption 6 protects information contained in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Information need not be particularly intimate to merit protection under Exemption 6, which shields from disclosure 'personal information, such as names and addresses,' that, if released, 'would create a palpable threat to privacy.'" *Garza v. U.S. Marshals Serv.*, No. CV 16-0976, 2018 WL 4680205, at *11 (D.D.C. Sept. 28, 2018) (quoting *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015)), *aff'd*, No. 18-5311, 2020 WL 768221 (D.C. Cir. Jan. 22, 2020). FOIA Exemption 6 thus "has been construed broadly to cover essentially all information sought from Government records that 'appl[y] to a particular individual.'" *Pinson v. U.S. Dep't of Just.*, 202 F. Supp. 3d 86, 99 (D.D.C. 2016) (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)). For this exemption to apply, the agency must "identify[] the relevant privacy interests in nondisclosure and the public interests in disclosure" and show that, "'on balance, disclosure would work a clearly unwarranted invasion of personal privacy.'" *Reed v. NLRB*, 927 F.2d 1249, 1251 (D.C. Cir. 1991) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). "'[T]he privacy interest of an individual in avoiding the unlimited disclosure of his or her name and address

23

is significant.'" *Id.* (quoting *Nat'l Ass'n of Retired Fed.
Emps.*, 879 F.2d at 875).

FOIA Exemption 7(C) operates similarly, protecting records
compiled for law enforcement purposes to the extent that their
disclosure "could reasonably be expected to constitute an
unwarranted invasion of personal privacy." 5 U.S.C. §
552(b)(7)(C). "The proper application of 'privacy exemptions [6
and 7(C)] turns on a balance of 'the individual's right of
privacy against the basic policy of opening agency action to the
light of public scrutiny.'" *Garza*, 2018 WL 4680205, at *12
(quoting *CEI Wash. Bureau, Inc. v. Dep't of Just.*, 469 F.3d 126,
128 (D.C. Cir. 2006)). If the agency meets its Exemption 6
burden, it will also meet the "lighter burden" under Exemption
7(C). *See Seized Prop. Recovery, Corp. v. U.S. Customs & Border
Prot.*, 502 F. Supp. 2d 50, 60 (D.D.C. 2007); *see also Roth v.
U.S. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

The Court concludes that DOJ has met its burden to withhold
names and other identifying information pursuant to FOIA
Exemptions 6 and 7(C). The Court accepts DOJ's claim that
"disclosure . . . could subject these individuals to harassment
and to questioning as to the scope of their involvement in the
ongoing investigations of the Review." Def.'s Mot., ECF No. 16-1
at 17 (citing Brinkmann Decl., ECF No. 16-3 ¶ 32; Jolly Decl.,
ECF No. 16-4 ¶ 19.). Because disclosure of the identities of

these law enforcement officials would not add greatly to the public's interest in scrutinizing agency action, the balance of the interests weighs in favor of non-disclosure for both exemptions.

The Court therefore **GRANTS** summary judgment to DOJ with respect to the withholding of names and other identifying information about members of the Review and other law enforcement personnel under FOIA Exemptions 6 and 7(C).

### 4. FOIA Exemption 7(F)

DOJ contends that FOIA Exemption 7(F) protects from disclosure information about witnesses for the Review. *See* Def.'s Mot., ECF No. 16-1 at 18-19. CREW does not argue otherwise. *See* Pl.'s Mot., ECF No. 18-1 at 15-16; Pl.'s Reply, ECF No. 23 at 1. As above, because the Court has an independent duty to determine whether a particular FOIA exemption is appropriate, *see Tokar*, 304 F. Supp. 3d at 94 n.3 (quoting *Winston & Strawn*, 843 F.3d at 505); the Court considers this exemption here.

FOIA Exemption 7(F) allows an agency to withhold information within law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). This exemption "has been invoked to protect the identities of informants, sources, and law enforcement personnel." *Michael v. U.S. Dep't of Just.*,

No. CV 17-0197 (ABJ), 2018 WL 4637358, at *12 (D.D.C. Sept. 27, 2018) (citing *Hammouda v. Dep't of Just. Off. of Info. Policy*, 920 F. Supp. 2d 16, 26 (D.D.C. 2013); *Fischer v. U.S. Dep't of Just.*, 723 F. Supp. 2d 104, 111 (D.D.C. 2010); *Blanton v. Dep't of Just.*, 182 F. Supp. 2d 81, 87 (D.D.C. 2002)). In considering claims for nondisclosure pursuant to Exemption 7(F), the Court must "inquire[] whether or not there is a nexus between disclosure and possible harm and whether the deletions were narrowly made to avert the possibility of such harm." *Berard v. Fed. Bureau of Prisons*, 209 F. Supp. 3d 167, 174 (D.D.C. 2016) (citing *Albuquerque Pub. Co. v. U.S. Dep't of Just.*, 726 F. Supp. 851, 858 (D.D.C. 1989)).

Here, DOJ invoked Exemption 7(F) to protect the identities of witnesses called by the Review whose safety could potentially be at risk if their names were released. *See* Def.'s Mot., ECF No. 16-1 at 18-19. These witnesses fall squarely within the category of individuals who warrant protection pursuant to this exemption. As EOUSA attests in its affidavit, "there was a reasonable likelihood that a threat of harm could be posed to the individuals who assisted in the course of the investigation, should the withheld material be released." Jolly Decl., ECF No. 16-4 ¶ 23. Because Exemption 7(F) does not require a balancing test, *see Michael*, 2018 WL 4637358, at *12 (citing *Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 29 (D.D.C. 2002)); the Court's

inquiry is satisfied with DOJ's credible statement of possible harm.

Accordingly, the Court **GRANTS** summary judgment to DOJ as to the withholding of witness information pursuant to FOIA Exemption 7(F).[4]

### C. The Records Are Not Reasonably Segregable

FOIA mandates that an agency disclose "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt" from disclosure. 5 U.S.C. § 552(b). Non-exempt portions of the record "must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). CREW argues that DOJ has not met its burden based on the representations made in its affidavits. *See* Pl.'s Mot., ECF No. 18-1 at 16-18. However, the Court has concluded that the information in the spreadsheets is exempt under FOIA Exemption 7(A). Accordingly, there is no non-exempt portion to segregate.

---

[4] Because the Court concludes that FOIA Exemption 7(F) protects witness information from disclosure, it need not determine whether FOIA Exemption 5 also applies to this information.

**V.   Conclusion**

For the foregoing reasons, the Court **GRANTS** DOJ's Motion for Summary Judgment, ECF No. 16; and **DENIES** CREW's Motion for Partial Summary Judgment, ECF No. 18.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **September 30, 2022**